**H. PERINE, Plaintiff,**

v.

**WILLIAM NORTON & COMPANY, INC., et al., Defendants.**

**No. 73 Civ. 1724.**

United States District Court, S. D. New York.

March 19, 1974.

Inc.; Martin M. Frank, Robert Bartels, New York City, Donald A. Derfner, New York City, of counsel.

ROBERT J. WARD, District Judge.

In this shareholder's derivative action, plaintiff moves for summary judgment on the issue of liability, for leave to amend the complaint to add a new cause of action as well as two new individual defendants, and for a preliminary injunction prohibiting the dissipation of assets of defendant William Norton & Company, Inc. ("Norton") in anticipation of judgment. Defendant Norton cross moves for summary judgment dismissing the complaint. For the reasons discussed below, plaintiff's motion is denied in its entirety, and defendant's cross-motion is granted.

Plaintiff, a shareholder of Designcraft Jewel Industries, Inc., ("Designcraft"), brings this action on behalf of that corporation, alleging a violation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (hereinafter referred to as § 16(b) of "the Act") in connection with the distribution of its shares. Norton, the only actual defendant which has been served, was co-underwriter of a public offering of 300,000 shares of Designcraft in May, 1972, and at that time distributed 250,000 shares. At all relevant times, the total number of outstanding shares in Designcraft was 817,500. Plaintiff alleges that simply by virtue of its purchase of more than ten percent of the outstanding shares of Designcraft in its underwriting of this public offering, Norton became an insider of Designcraft and liable for all profits upon sale of these shares. Plaintiff does not allege bad faith, or that Norton was an insider by virtue of any other connection with Designcraft.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff; Stanley L. Kaufman, New York City, of counsel.

Feldshuh & Frank, New York City, for defendant William Norton & Co.,

■■ Plaintiff contends that Norton is not exempted by Reg. § 240.16b-2 [1]

1. Reg. § 240.16b-2. (a) Any transaction of purchase and sale, or sale and purchase, of a security which is effected in connection with the distribution of a substantial block of securities shall be exempt from the provisions of Section 16(b) of the Act, to the ex-

("Rule 16b-2"), which exempts, upon specified conditions, certain underwriters otherwise covered by § 16(b) of the Act, because Norton did not comply with the condition outlined in Rule 16b-2(a)(3). The underwriters covered by Rule 16b-2 are insider-underwriters; the condition allegedly not complied with provides that non-insider-underwriters participate in the distribution on terms at least as favorable, and to at least as great an extent, as the insiders. Plaintiff contends that the doctrine of Stella v. Graham-Paige Motors, 232 F.2d 299 (2d Cir. 1956), cert. den., 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52 (1956), that a purchaser of securities becomes an insider at the time of the purchase which brings his holdings over the ten percent level provided in § 16(b) of the Act, strictly applies to underwriters or other distributors of securities. Under this theory, no underwriter could make a firm commitment to distribute a block of securities larger than ten percent of the outstanding shares of the issuing corporation, unless an equal number of shares were distributed by other underwriters on equally favorable terms.

In the judgment of this Court, such an interpretation is not compelled by the plain meaning of the language of the rule, and serves the purpose neither of §

16(b) nor of Rule 16b-2. Moreover, the Securities and Exchange Commission releases which refer to the rule in question indicate that the Commission also does not consider an underwriter of a large block of securities an insider solely by virtue of a single underwriting venture, but understands the provision to refer only to underwriters with some other connection to the issuing corporation.

 The courts have recognized that the Act, as a remedial statute, is to be interpreted liberally in the interests of furthering its purpose. See, e. g., Adler v. Klawans, 267 F.2d 840 (2d Cir. 1959); Ellerin v. Massachusetts Mutual Life Insurance Co., 270 F.2d 259 (2d Cir. 1959). The purpose of § 16(b) was to prevent unfair use of insider information, unavailable to the public, in obtaining short-swing profits. The mechanism Congress chose was an objective rule that any profits made when insiders bought and sold securities within six months should inure to the corporation. See II Loss, Securities Regulation 1040 et seq. (1961).

 The statutory language does not specify with complete clarity who is an "insider." The provisions of §§ 16(a) and (b) with respect to reporting and

tent specified in this § 240.16b-2, as not comprehended within the purpose of said section, upon the following conditions:

(1) The person effecting the transaction is engaged in the business of distributing securities and is participating in good faith, in the ordinary course of such business, in the distribution of such block of securities;

(2) The security involved in the transaction is (A) a part of such block of securities and is acquired by the person effecting the transaction, with a view to the distribution thereof, from the issuer or other person on whose behalf such securities are being distributed or from a person who is participating in good faith in the distribution of such block of securities, or (B) a security purchased in good faith by or for the account of the person effecting the transaction for the purpose of stabilizing the market price of securities of the class being distributed or to cover an over-allotment or other short position created in connection with such distribution; and

(3) Other persons not within the purview of Section 16(b) of the Act are participating in the distribution of such block of securities on terms at least as favorable as those on which such person is participating and to an extent at least equal to the aggregate participation of all persons exempted from the provisions of Section 16(b) of the Act by this § 240.16b-2. However, the performance of the functions of manager of a distributing group and the receipt of a bona fide payment for performing such functions shall not preclude an exemption which would otherwise be available under this § 240.16b-2.

(b) The exemption of a transaction pursuant to this § 240.16b-2 with respect to the participation therein of one party thereto shall not render such transaction exempt with respect to participation of any other party therein unless such other party also meets the conditions of this § 240.16b-2. Fed.Sec.L.Rep. ¶ 26,083.

profit-forfeiture apply to transactions by any person who is a director or an officer of a company with an equity security registered on an exchange, or who is "directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security" so registered. 15 U.S.C. § 78p. These persons are commonly referred to as "insiders." The term "beneficial owner" was not defined in the statute, but has been construed in subsequent Commission rules and court decisions. The evident attempt throughout this construction is to include broadly all who benefit from the holdings, not merely record owners, but to exclude from the provisions of the statute those who cannot properly be called insiders. *See* II Loss, *supra*, 1100 et seq., and cases cited therein. Thus, partners are individually insiders by virtue of partnership holdings; the courts penetrate intra-family bookkeeping arrangements to ascertain who is the beneficial owner; but the owner of stock in a holding company which is itself a ten percent beneficial owner of another company need not be concerned with the reporting provisions. *Id.* These rules and judicial constructions clarify the meaning of "beneficial owner" in the interest of preventing unfair use of inside information in obtaining short-swing profits, thereby effectuating the purpose of this section of the Act.

Stella v. Graham-Paige Motors, *supra*, interpreting the statutory language "both at the time of purchase and sale," 15 U.S.C. § 78p(b), held that a purchaser of securities, in that case not an underwriter, becomes an insider at the very time of that purchase which makes him the beneficial owner of more than 10% of the outstanding shares of the corporation. Therefore, the corporation will recover the profits he would otherwise' have made on any sale within the next six months. Although no case has been found which so holds, it is recognized that this rule applies to underwriters as well, to the extent that they are within the scope of § 16(b). *See* Comment, 9 Stan.L.Rev. 582 (1957).

However, to extend its application to the point of requiring that any "firm commitment" distribution of a single large block of securities be divided among more than one underwriter, even when the single or principal underwriter acquires his shares solely with a view to distribution and has no prior connection whatsoever with the corporation, and so cannot be said to have profited from access to inside information, would, in the judgment of this Court, unduly hamper the distribution of securities without further effectuating the purpose of the Act. *See* discussion in 9 Stan.L.Rev. 582 (1957), *supra*.

The releases of the Securities and Exchange Commission issued since the promulgation of Rule 16b-2 demonstrate that this approach is compatible with the Commission's understanding of § 16(b). The rule, as originally promulgated, clearly indicated that its purpose was to exempt underwriters who, prior to the underwriting transaction, had some "insider" status:

> Rule NB2. *Exemption from Section 16(b) of Certain Distributing and Underwriting Transactions.* Any transaction of purchase and sale of a security shall be exempt from the provisions of Section 16(b), to the extent prescribed in this rule, as not comprehended within the purpose of said subsection, upon condition that:
>
> (a) The person effecting such transaction purchases such security, with a view to the distribution thereof, from a person (1) who is the issuer thereof, or (2) who is participating in good faith in the distribution of the same issue of securities and whose ownership of such security has been acquired within six months, directly or solely through other such participants, from the issuer;
>
> (b) Such transaction is effected by a person who is otherwise engaged in the business of buying and selling securities for his own account,

through a broker or otherwise, as a part of a regular business; and

(c) If the person effecting such transaction is either (1) an officer or director of the issuer, (2) a firm of which such officer or director is a partner, or (3) a corporation or other person in respect of which such officer or director is an officer, director or beneficial owner, directly or indirectly, of more than 10 per cent of any class of equity security, then other persons who are not specified in clauses (1), (2) or (3), of this paragraph (c) must have participated in the purchase of such security (or other securities of the same issue) with a view to the distribution thereof, on terms identical with those on which such specified persons have participated and to an extent at least equal to the aggregate participation of all such specified persons.

The exemption of a transaction pursuant to this rule with respect to the participation therein of one party thereto shall not render such transaction exempt with respect to participation of any other party therein unless such other party also meets the requirements of paragraphs (a), (b), and (c) of this rule.

Sec.Ex.Act Rel. 264 (1935).

The accompanying explanation by the Commission staff emphasizes this purpose:

The new Rule NB2 affords an exemption for certain cases by providing that underwriters who happen to have a member of their firm also an officer or director of the issuer or one of its principal stockholders who are regularly engaged in the business of buying and selling securities need not account to the company for profits realized from purchases and sales made in the distribution of a security for the company, provided that independent underwriters have a participation in the underwriting of at least 50 per cent on identical terms. No exemp-

tion, however, is granted from the requirements of Section 16(a) which calls for a full disclosure of those transactions.

*Id.*

In 1936 the Commission added a paragraph to the rule, after ¶1 in subsection (c). It explained:

The second change in the rule enlarges the scope of the original exemption by making it available, on specified conditions, to any person who, with a view to distribution, acquires more than 10% of the equity securities of the issuer from its parent, subsidiary, or commonly controlled affiliate, or from individuals in similar relationships to the issuer. This second change is to become effective immediately.

Sec.Ex.Act Rel. 535 (1936).

Paragraph (c) then read:

(c) If the person effecting such transaction is either (1) an officer or director of the issuer, (2) a firm of which such officer or director is a partner, employee, appointee, nominee or representative, or (3) a corporation or other person in respect of which such officer or director is an officer, director, employee, appointee, nominee, representative or beneficial owner, directly or indirectly, of more than 10 per centum of any class of equity security, then other persons who are not specified in clauses (1), (2) or (3), of this paragraph (c) must have participated in the purchase of such security (or other securities of the same issue) with a view to the distribution thereof, on terms identical with those on which such specified persons have participated and to an extent at least equal to the aggregate participation of all such specified persons.

As used in paragraph (a) of this rule, the term "issuer" shall include, in addition to an "issuer" within the meaning of Section 3(a)(8), any person directly or indirectly controlling or controlled by the issuer, or any person

under direct or indirect common control with the issuer. As used in this rule, the term "issue" shall include, in addition to an issue of securities issued by an issuer within the meaning of Section 3(a)(8), securities purchased with a view to distribution by the participants in any single distribution from any person directly or indirectly controlling or controlled by the issuer thereof, or from any person under direct or indirect common control with the issuer.

The exemption of a transaction pursuant to this rule with respect to the participation therein of one party thereto shall not render such transaction exempt with respect to participation of any other party therein unless such other party also meets the requirements of paragraphs (a), (b), and (c) of this rule.
*Id.*

In 1947 the Commission again amended the rule, to add a provision that mere receipt of a fee as manager of an underwriting syndicate should not destroy any exemption otherwise applicable. At that time the Commission clearly stated its understanding of the rule's effect:

> These rules conditionally exempt underwriting transactions from Sections 16(b) and 16(c) of the Securities Exchange Act of 1934. Section 16(b) is the section which provides that any profit realized by a beneficial owner of more than ten percent of any class of any equity security registered on a national securities exchange, or by a director or officer of the issuer of such a security, as a result of any purchase and sale (or sale and purchase) of any equity security of such issuer within a period of less than six months shall inure to the corporation. Section 16(c) prohibits short sales of such equity securities by such persons. The two rules exempt *bona fide* underwriting transactions by dealers who fall within one of the three classes of "insiders" specified in Section 16, or by dealer firms with which such persons are connect-

ed. However, in order to prevent such "insiders" or "insider firms" from acquiring a preferential position where they participate in a distribution, the exemptions afforded by the two rules are subject to the condition that "non-insiders" or "non-insider firms" shall have participated in the distribution "on terms at least as favorable" as those on which the "insiders" have participated and "to an extent at least equal to the aggregate participation" of all "insiders."

Sec.Ex.Act Rel. 3907.

In 1952, however, the Commission restructured the rule. Nothing in its release indicated a shift to the viewpoint that an underwriter could become an insider simply by virtue of its distributing activities. It indicated only that the amendment made in 1936 was being further extended:

> The new rule X–16B–2 broadens the prior rule by providing that the exemption is available for transactions of purchase and sale of securities in the course of a distribution of a block of securities on behalf of a security holder not standing in a control relationship to the issuer, as well as to other public distributions where the transactions are in the course of a public distribution of an issue of securities on behalf of an issuer, or a person who does stand in a control relationship to the issuer.

Sec.Ex.Act Rel. 4754 (1952).

But the new rule was worded substantially differently than the old rule:

> Rule X–16B–2. Exemption from Section 16(b) of Certain Distributing Transactions.
>
> (a) Any transaction of purchase and sale of a security which is effected in the distribution of a substantial block of securities of the same class shall be exempt from the provisions of Section 16(b) of the Act, to the extent specified in this rule, as not comprehended within the purpose of said section, upon the following conditions:

(1) The person effecting the transaction is engaged in the business of distributing securities and is participating in good faith, in the ordinary course of such business, in the distribution of such block of securities;

(2) The security involved in the transaction is a part of such block of securities and is acquired by the person effecting the transaction, with a view to the distribution thereof, from the issuer or other person on whose behalf such securities are being distributed or from a person who is participating in good faith in the distribution of such block of securities; and

(3) Other persons not within the purview of Section 16(b) of the Act are participating in the distribution of such block of securities on terms at least as favorable as those on which the person effecting the transaction is participating and to an extent at least equal to the aggregate participation of all persons exempted from the provisions of Section 16(b) of the Act by this rule. However, the performance of the functions of manager of a distributing group and the receipt of a bona fide payment for performing such functions shall not preclude an exemption which would otherwise be available under this rule.

(b) The exemption of a transaction pursuant to this rule with respect to the participation therein of one party thereto shall not render such transaction exempt with respect to participation of any other party therein unless such other party also meets the conditions of this rule.

Sec.Ex.Act Rel. 4754 (1952).

This remains the basic structure of the rule.

■ Courts give authoritative weight to interpretive rules and practices of the agency charged with the administration of an act, which embody interpretations made contemporaneously with the enactment of the statute, or which have been consistently followed over a long period. Davis, Administrative Law Treatise § 5.06 (1958). One reason for this maxim is that business is generally transacted in reliance on the interpretive practice. *Id.* In the same vein, courts give great weight to administrative interpretations of agency rules. *See* Bowles v. Seminole Rock Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); Davis, *supra*, § 5.05, n. 25.

The regulations accompanying Rule 16(b) were originally promulgated to exempt certain clearly defined insiders from liability in particular underwriting situations. As the regulations were amended, the Commission reiterated its understanding of those to whom both the Rule and the exemption applied. It is apparent that this interpretation serves to effectuate the purpose of the Act, that is, to prevent unfair use of inside information to the relative disadvantage of outsiders. In the absence of a clear indication from the Commission that the original intent of the regulation to cover certain defined insiders was, by its rephrasing in 1952, substantially changed, or any convincing argument that the interpretation advanced by plaintiff would serve to further the purpose of the Act, this Court interprets the language in accordance with the meaning which the agency originally and continuously expressed.

■ Therefore, the Court holds that, upon the facts of this case, the profits made in connection with the distribution of more than 10% of the outstanding shares of Designcraft, by an underwriter with no other "insider" status, shall not inure to the corporation.

Plaintiff's motion is denied. Defendant Norton's cross-motion for summary judgment is granted and the complaint is dismissed.

Settle judgment on notice.